IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMMA PORTER, et al.                    :

                                       :

     v.                                :    Civil Action No. DKC 11-1251

                                       :

GREENPOINT MORTGAGE FUNDING,
INC., et al.                           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mortgage fraud action are the motions to dismiss filed by Defendants GreenPoint Mortgage Funding, Inc. ("GreenPoint") and MSO REO I, LLC ("MSO"). (ECF Nos. 5-6). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion to dismiss will be granted.

**I.    Background**

**A.    Factual Background**

The following facts are largely taken from the complaint, but some of them have been supplemented with information contained in the attachments to Defendants' motions to dismiss.[1]

---

[1] "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage," the court may consider it where the plaintiff has notice of the evidence, does not dispute its authenticity, and relies on it in framing the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2002); *see also Douglass v. NTI-TSS, Inc.*, 632 F.Supp.2d 486, 490 n.1 (D.Md. 2009). Here, Defendants have

Plaintiffs Emma and Charlie Porter are married and both in their sixties. For several years, they have owned a home in Accokeek, Maryland. In June 2007, the Porters approached a broker at GreenPoint about refinancing the mortgage on their home.[2] At that time, their existing mortgage loan totaled more than $592,000. The Porters requested that their refinanced mortgage loan have a fixed rate and "a certain low-payment, inclusive of all taxes and insurance." (ECF No. 1 ¶ 13). The broker prepared the Porters' loan application, which listed Mrs. Porter's gross monthly income as $15,750, but did not request any documents to verify this information or the Porters' ability to repay the loan over its expected thirty-year life.[3]

---

attached the loan applications, promissory notes, loan agreements, and the deed of trust to their motions to dismiss, and the Porters do not contest the authenticity of these documents. Because the Porters rely on these loan documents in framing their complaint and seek to have them declared void through this action, these documents may be considered in resolving Defendants' motions to dismiss.

[2] The loan documents indicate that the refinancing closed on June 21, 2007, while the complaint states that the refinancing occurred in July 2007. This slight discrepancy in dates is immaterial to the resolution of the pending motions, but in order to be consistent with the loan documents, this memorandum opinion will adopt June 21, 2007, as the date of closing. *See Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 683 (D.Md. 2001) ("When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail.").

[3] The complaint indicates that the Porters took the loan out together, but the loan applications and promissory notes only

Despite the Porters' request for a fixed-rate loan, the mortgage broker applied for "an adjustable rate mortgage with a 10-year interest only period," which had "a monthly payment far in excess of what [the Porters] had requested and . . . could actually afford." (*Id.* ¶¶ 20, 22). The broker, however, did not inform the Porters about applying for this mortgage loan or explain that this loan was different in kind from the one they had requested. Rather, in keeping with a company policy of secretly qualifying borrowers for loans they could not afford in order to earn higher fees, the broker "concealed this information" from the Porters and told them that their refinanced mortgage was "a fixed-rate loan with a payment that they could afford." (*Id.* ¶¶ 21-22). The loan documents indicate that the refinanced mortgage actually included two loans: (1) a fixed-rate loan for $533,000, with a ten-year interest-only payment period, and (2) a home equity line of credit, with a variable interest rate, for $100,000. At closing, Mrs. Porter signed or initialed each page of these loan documents, while Mr. Porter signed or initialed each page of the

---

list Mrs. Porter as the borrower. (ECF No. 5-2, at 3, 9, 16, 20). The deed of trust, however, lists both Mr. and Mrs. Porter as borrowers on the refinanced mortgage. (ECF No. 6-4, at 1).

deed of trust. At some point after the closing, GreenPoint sold the mortgage to MSO.[4]

## B. Procedural Background

On May 10, 2011, the Porters filed this action against GreenPoint and MSO, alleging fraud/fraudulent inducement and violations of the Maryland Consumer Protection Act ("MCPA") and section 12-127 of the Maryland Commercial Law Code ("section 12-127").[5] Specifically, the Porters contend that GreenPoint's concealment of its decision to place them in an interest-only, adjustable-rate mortgage loan, rather than the fixed-rate loan they had requested, constitutes fraud and an unfair trade practice within the meaning of the MCPA. They also allege that

---

[4] In their complaint, the Porters assert that MSO "conducted no due diligence" regarding the Porters' ability to repay the mortgage loan when it purchased their mortgage. (*Id.* ¶ 19). The Porters abandon this allegation in their opposition, however, acknowledging that they have included MSO as a defendant only because it owns their mortgage and is a party necessary for them to obtain "complete recovery." (ECF No. 8, at 3).

[5] Acting *pro se*, the Porters had filed an action in state court in 2010 against AMS Servicing, BSI Financial Services, and MSO relating to the original mortgage on their home. Their complaint alleged claims for "money lent" and breach of contract, as well as violations of the Truth in Lending Act. After removing the case to federal court, the defendants moved to dismiss or, in the alternative, for a more definite statement. The court granted the defendants' motion for a more definite statement and directed the Porters to amend their complaint. *See Porter v. AMS Serv., LLC*, No. RWT 10cv3252, 2011 WL 673780 (D.Md. Feb. 16, 2011). When they failed to amend, the court struck the complaint and entered judgment in favor of the defendants.

GreenPoint's failure to request documentation, such as pay stubs and tax returns, to verify their ability to repay the refinanced mortgage loan violated section 12-127.[6]  Indeed, according to the Porters, their "inability to repay the loan under its terms was obvious from the face of the loan documents." (*Id.* ¶ 28).

GreenPoint and MSO subsequently filed motions to dismiss all counts, asserting that the Porters' claims are barred by the statute of limitations or, alternatively, that the Porters had otherwise failed to state a claim for which relief could be granted.  The Porters have opposed both of these motions.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in

---

[6] At the time the Porters refinanced their loan, section 12-127 stated, in relevant part, as follows:

> A lender may not make a covered loan without giving due regard to the borrower's ability to repay the loan in accordance with its terms . . . . A borrower is presumed to be able to repay a loan if at the time the loan is made the borrower's total scheduled monthly payment obligations, including the required loan payment, do not exceed 45 percent of the borrower's monthly gross income.

the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Both GreenPoint and MSO have moved to dismiss on the ground that the Porters' claims are time-barred, but the Porters contend that the court "cannot reach the merits" of this argument because the statute of limitations is an affirmative defense. (ECF No. 7, at 6). While the statute of limitations is an affirmative defense that is not generally an appropriate ground for dismissal, *see Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002), the Porters' contention construes this principle too broadly. Indeed, dismissal pursuant to Rule 12(b)(6) is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996), a circumstance that most commonly arises in cases where the statute of limitations has run on the

claim, 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (1990). Where the parties attach documents to their motion papers that are integral to the complaint, those documents may be considered in evaluating the merits of a statute of limitations defense. *See Douglass*, 632 F.Supp.2d at 490 n.1. Here, consideration of the complaint in conjunction with the loan documents makes the merits of this defense apparent.

## III. Analysis

Although Defendants present several arguments in moving to dismiss the Porters' complaint, only the statute of limitations defense need be considered here because it is dispositive.[7] According to Defendants, the Porters' claims must be dismissed because the statute of limitations expired prior to the filing of the Porter's complaint. The Porters vigorously dispute this

---

[7] In its motion to dismiss, GreenPoint suggests that – as a threshold matter – Mr. Porter does not have standing to bring the claims alleged because "he was not a party to either the Applications or the Loans that resulted." (ECF No. 5-1, at 2 n.1). As an initial matter, it is not clear that Mr. Porter lacks standing. The deed of trust lists him as a "borrower" and he signed this document as a "borrower," even though he did not sign the loan agreements themselves. *See Mark Castillo v. Countrywide Home Loans, Inc.*, No. 10-CV-03538-LHK, 2010 WL 4704429, at *1 n.1 (N.D.Cal. Nov. 12, 2010) (rejecting defendants' argument that a plaintiff did not have standing where he signed the deed of trust as a borrower, even though he did not sign the loan itself). Ultimately, this issue need not be resolved because it does not change the outcome of the case. That is, regardless of whether Mr. Porter has standing, his claims – as well as Mrs. Porter's claims – will be dismissed.

assertion, setting forth numerous reasons that their complaint is not time-barred. The complaint and loan documents make clear that Defendants have the better end of this argument.

Because this action is based on federal diversity jurisdiction, the court applies the Maryland statute of limitations and Maryland law construing it in evaluating the merits of this defense. *Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 985 (D.Md. 2002). In Maryland, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code. Ann., Cts. & Jud. Proc. § 5-101. The parties appear to agree that the three-year limitations period set forth in section 5-101 governs the claims at issue in this case.[8]

_____

[8] Numerous cases have recognized that a three-year limitations period applies to claims alleging fraud and violations of the MCPA. *See, e.g.*, *Douglass*, 632 F.Supp.2d at 491 (reasoning that the three-year statute of limitations had run on a plaintiff's fraud claim); *Master Fin., Inc. v. Crowder*, 409 Md. 51, 65 (2009) (concluding that the statute of limitations applicable to MCPA claims is three years). No court, however, has yet had occasion to determine the limitations period applicable to claims brought under section 12-127, which does not contain its own limitations period. GreenPoint asserts that the "default" three-year limitations period of section 5-101 – as opposed to the twelve-year period for "specialties" set forth in section 5-102 - is applicable to such claims. The Porters do not dispute this contention.

Generally, statutes of limitations are strictly construed, with courts "frown[ing] upon" implied or equitable exceptions. *Miller*, 224 F.Supp.2d at 986. Due to the "unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," however, Maryland courts apply the "discovery rule" in determining the date that a cause of action accrues. *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000). Pursuant to this rule, the statute of

---

Section 5-102 provides, in relevant part, that a twelve-year statute of limitations applies to actions on promissory notes or other instruments under seal or to any "other specialty." Because section 12-127 claims rest on the lender's purported failure to verify the borrower's ability to repay a mortgage loan, rather than on "anything inherent in the loan documents," those claims do not trigger the specialty provision related to promissory notes under seal. *See Master Fin., Inc.*, 409 Md. at 64-65 (reaching the same conclusion in regard to a statute related to lender licensing).

Section 12-127 also does not appear to qualify as an "other specialty" requiring application of the twelve-year limitations period. To invoke this provision, the plaintiff must pursue a remedy "authorized solely by the statute . . . and [which] does not otherwise exist under the common law." *Id.* at 70. Here, the Porters seek restitution for all principal and interest payments made to date and a declaration that the mortgage loan is void. Section 12-127, however, does not authorize either of these remedies, and the Porters could pursue at least the latter under the common law. *See id.* at 73 (describing the remedy of declaring a mortgage loan void as a "purely common law one"). As a result, the twelve-year limitations period would not apply to the Porters' section 12-127 claim, and the "default" three-year statute of limitations set forth in section 5-101 would govern. *Id.* at 70.

limitations does not begin to run until the plaintiff knew or, through the exercise of due diligence, reasonably should have known of the wrong. *Doe v. Am. Nat'l Red Cross*, 923 F.Supp. 753, 756 (D.Md. 1996); *Pennwalt Corp. v. Nasios*, 314 Md. 433, 443 (1988) (explaining that a plaintiff reasonably should have known of a wrong when he had "knowledge of sufficient facts to cause a reasonable person to investigate further"). Therefore, when considering a statute of limitations defense, a cause of action accrues only when "(1) the legally operative facts permitting the filing of a claim come into existence; and (2) the claimant has notice of the nature and cause of his or her injury." *Miller*, 224 F.Supp.2d at 986.

Here, the Porters refinanced their mortgage loan on June 21, 2007. The events purportedly giving rise to the Porters' claims – GreenPoint's preparation of their loan application, its failure to verify their ability to repay, its concealment of the decision to place them in a different loan than they requested, and the loan closing – had all occurred as of that date. Indeed, the complaint does not set forth any relevant factual allegations regarding events that occurred after that time. Therefore, on June 21, 2007, "the legally operative facts permitting the filing of [the Porters] claim[s] came into existence." *See id.* (internal quotation marks omitted) (concluding that the facts permitting the filing of a

plaintiff's MCPA and "illegal contract" claims arose when the plaintiff obtained the loan); *Borlo v. Navy Fed. Credit Union*, 458 B.R. 228, 234 (D.Md. 2011) (reasoning that the "legally operative facts" related to a claim involving procurement of an installment loan arose at the time the defendant made the loan to the plaintiff).

Additionally, the Porters were on notice regarding their injury as of June 21, 2007. The loan documents expressly identified critical loan information, such as interest rates and monthly payments, about which the Porters contend they were deceived. Mrs. Porter initialed or signed the documents containing this information, and Mr. Porter – who was present at the closing – signed the deed of trust, which referred to these documents when explaining that the deed of trust secured the refinanced mortgage loan. Thus, the Porters had "sufficient knowledge of circumstances indicating [they] might have been harmed" on June 21, 2007, because the information in the documents they signed would have led a reasonable person to investigate further the terms of the loan. *Miller*, 224 F.Supp.2d at 986; *see also Hood v. Aurora Loan Servs.*, No. CCB-10-11, 2010 WL 2696755, at *3 (D.Md. July 6, 2010) (concluding that plaintiffs alleging mortgage fraud were on notice regarding their claims "at the time they entered into the mortgage agreement"); *King v. Ameriquest Mortg. Co.*, No. PJM 09-977, 2009

WL 3681688, at *2-3 (D.Md. Oct. 30, 2009) (same).[9] This conclusion is bolstered by the Porters' own admission that the face of the loan documents made it "obvious" that they could not comply with the terms of the loan. (ECF No. 1 ¶ 28). Thus, the Porters reasonably should have known of the wrong at the time that the refinancing occurred.[10]

Despite being on notice of their claims as of June 21, 2007, the Porters did not file the complaint at issue in this case until May 10, 2011, a date well outside the three-year

---

[9] The Porters contend that the loan applications were signed the same day as the other loan documents, and that they did not *receive* a copy of the loan applications until some unspecified later date. Neither of these assertions, even if true, alters the conclusion that the Porters knew of facts on June 21, 2007, which would have led a reasonable person to investigate further the terms of the refinanced mortgage loan. Under Maryland law, a party who signs a contract is presumed to have read and understood its terms. *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 595 (2006); *see also Koons Ford of Balt., Inc. v. Lobach*, 398 Md. 38, 46 (2007). Mr. and Mrs. Porter both signed or initialed various loan documents discussing or referencing these terms. Regardless of whether they signed the loan documents in one sitting or immediately received a copy of the loan applications, they are presumed to have understood the terms of the documents they signed at the time they signed them.

[10] In the complaint, the Porters repeatedly assert that the monthly payments on the refinanced mortgage loan were "far in excess of what [they] had requested and what they could actually afford." (*Id.* ¶ 22). It is unclear whether this allegation refers to the monthly mortgage payments required during the ten-year interest-only period (which began in August 2007) or the much higher monthly payments that would begin upon termination of the interest-only period (in August 2017). (*See* ECF No. 5-2, at 14). To the extent it refers to the former, the Porters would have had further notice that they had been harmed as of August 2007, when those payments became due.

12

limitations period. The Porters nonetheless advance the following arguments in an attempt to justify the complaint's untimely filing: (1) the statute of limitations has not yet run because GreenPoint's actions were a form of discriminatory lending and constituted a "continuing violation"; (2) the Porters could not bring their claims until they learned about GreenPoint's discriminatory lending practices; (3) a trust relationship exists between the Porters and GreenPoint, thus tolling the limitations period; and (4) GreenPoint's concealment of the mortgage loan's terms warrants tolling on equitable grounds. Each of these arguments is without merit.

The Porters first assert that the continuing violation doctrine renders their complaint timely. Maryland courts do recognize this doctrine, but they apply it only where a defendant engages in repeated unlawful acts, and at least one of those acts occurs within the limitations period. *See MacBride v. Pishvaian*, 402 Md. 572, 584 (2007). The Porters, however, do not allege that any of GreenPoint's actions occurred inside that period. Instead, as previously explained, their complaint discusses only the unlawful actions in which GreenPoint purportedly engaged at the time of refinancing; it mentions no relevant facts that occurred after closing.

Perhaps recognizing as much, the Porters attempt to recast their complaint in a wholly new light in an effort to render the

continuing violation doctrine applicable to their case. Specifically, in their opposition, the Porters contend that GreenPoint's actions constituted racially discriminatory lending practices that they did not discover until other cases involving such practices – and GreenPoint – were brought to light. This contention suffers from two fatal flaws. As an initial matter, despite the Porters' assertions to the contrary, they did not raise any discrimination claims in their complaint. The complaint neither mentions that the Porters were treated differently than other borrowers nor identifies their race. Rather, only in their opposition do the Porters state that they were treated differently than "similarly situated white borrowers." (ECF No. 7, at 3). Because plaintiffs may not amend their complaints through the use of motion briefs, *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), any contentions related to discriminatory lending need not be considered in addressing the merits of the Porters' argument.

Even if these contentions were considered, however, the continuing violation doctrine would not apply to this case. The Porters rely heavily on *Ramirez v. GreenPoint Mortgage Funding*, 633 F.Supp.2d 922 (N.D.Cal. 2008), to support their argument that the doctrine is applicable, but their reliance is misplaced. In *Ramirez*, the court permitted the discrimination claims of two plaintiffs to go forward even though certain of

the purportedly discriminatory actions had occurred outside the limitations period. *Ramirez*, however, involved a situation where at least one of the unlawful actions allegedly occurred inside the limitations period, and this fact was critical to the court's decision to apply the continuing violation doctrine. 633 F.Supp.2d at 930. Because the Porters make no similar allegation in their complaint, they may not rely on this doctrine to justify the untimely filing of their complaint.

The substance of the Porters' next argument resembles the first, and it is, therefore, equally unavailing. Here, the Porters contend that they could not bring their claims until they learned about GreenPoint's "discriminatory intent" from reports about other GreenPoint borrowers who experienced discrimination. (*See* ECF No. 7, at 2 n.2 & 8). But because the Porters did not raise any discrimination claims in their complaint, it is irrelevant that they did not learn about GreenPoint's discriminatory lending practices until some unspecified time after closing. *See Zachair*, 956 F.Supp. at 748 n.4. Additionally, their argument suffers from a second flaw. At bottom, the Porters contend that their claims could not have accrued until they learned that GreenPoint had acted unlawfully – a contention that Maryland courts have repeatedly rejected. *See King*, 2009 WL 3681688, at *2 (dismissing the contention that a plaintiff's mortgage fraud claim did not accrue until "news

reports of predatory lending surfaced," because "the discovery rule applies to the discovery of facts, not to the discovery of the legal basis for a claim" (internal quotation marks omitted); *see also Miller*, 224 F.Supp.2d at 986 ("Knowledge of facts, however, not actual knowledge of their legal significance, starts the statute of limitations running.").

The Porters also assert that they had entered into a "trust relationship" with GreenPoint sufficient to toll the statute of limitations. (ECF No. 7, at 8). Under a doctrine known as the "continuation of events" theory, Maryland courts have held that the existence of a fiduciary relationship between the parties may toll the statute of limitations. *E.g.*, *MacBride*, 402 Md. at 582.

> The common reasoning in cases [applying] the
> continuation of events theory is that a
> relationship which is built on trust and
> confidence generally gives the confiding
> party the right to relax his or her guard
> and rely on the good faith of the other
> party so long as the relationship continues
> to exist.

*Id.* at 583 (internal quotation marks omitted). To render this theory applicable, plaintiffs must provide specific factual allegations supporting the existence of a fiduciary relationship. *Dual, Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 173-74 (2004). The existence of the fiduciary relationship itself, however, does not indefinitely toll the statute of

limitations.  Indeed, despite that relationship, the limitations period begins to run "against an aggrieved party if that party had knowledge of facts that would lead a reasonable person to undertake an investigation that, with reasonable diligence, would have revealed wrongdoing on the part of the fiduciary." *Id.* at 174 (citing *Frederick Rd. Ltd. P'ship*, 360 Md. at 99-100).

Once again, this theory – as applied to the present action – fails for multiple reasons.  As an initial matter, it is not clear that a fiduciary relationship even existed between the parties in this case.  Under Maryland law, "the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature." *Kuechler v. Peoples Bank*, 602 F.Supp.2d 625, 633 (D.Md. 2009) (internal quotation marks omitted).  The only allegation from the complaint that the Porters cite in support of the alleged fiduciary relationship is their assertion that they "trusted that Greenpoint would follow-through with its representations."  (ECF No. 1 ¶ 37).  In addition to the fact that this allegation hardly satisfies the "specific facts" requirement necessary to demonstrate a fiduciary relationship, it further fails to demonstrate that GreenPoint ever consciously entered into such a relationship. *See Parker v. Columbia Bank*, 91 Md.App. 346, 369-70 (1992) ("[A] borrower cannot . . .

unilaterally impose a fiduciary relationship on another without a *conscious assumption* of such duties by the one sought to be held . . . liable as a fiduciary.").

More fundamentally, even if a fiduciary relationship did exist between the Porters and GreenPoint at the time of the refinancing, the "continuation of events" theory is inapplicable here. As previously discussed, the Porters knew of facts that would have led a reasonable person to investigate the circumstances surrounding the refinanced mortgage loan as of June 21, 2007, when they signed or initialed various loan documents detailing the new loan terms with which it "was obvious" they could not comply. (ECF No. 1 ¶ 28). Thus, the statute of limitations began to run on that date, regardless of whether a fiduciary relationship existed between the parties.

The Porters' final argument seeks to toll the statute of limitations on equitable grounds because GreenPoint allegedly "conceal[ed] the true nature of [the] transaction." (ECF No. 7, at 9). Section 5-203 of the Maryland Courts and Judicial Proceedings Code states that "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Courts applying this statutory provision have done so strictly, requiring plaintiffs

to set forth, in the complaint, specific allegations regarding "how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Douglass*, 632 F.Supp.2d at 491-92; *see also Doe v. Archdiocese of Wash.*, 114 Md. App. 169, 190 (1997). Where a plaintiff fails to articulate such facts in the complaint, the doctrine of equitable tolling does not apply. *See Douglass*, 632 F.Supp.2d at 491-92 (declining to toll the statute of limitations in a fraud action where the complaint "failed to allege that [the plaintiff] exercised ordinary diligence in discovering the alleged fraud").

Here, the Porters' complaint wholly fails to make any of these allegations. The relevant factual allegations in the complaint do not extend beyond the date that the refinanced mortgage loan closed; thus, the complaint makes no mention of how the Porters discovered the purported fraud and why – despite the Porters' diligence - GreenPoint's actions kept them from discovering it sooner. Indeed, the Porters' allegations, coupled with the loan documents, instead reveal that the Porters were aware of numerous facts on June 21, 2007, which should have raised their suspicions and caused them to investigate the terms of the refinanced mortgage loan. *See Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F.Supp.2d 443, 452-53 (D.Md.

2010) (concluding that equitable tolling did not apply where plaintiffs had failed to exercise diligence in the face of suspicious facts).[11] As a result, the Porters' efforts to invoke the equitable tolling doctrine must fail.

The statute of limitations began to run – and expired – well before the Porters filed their complaint in this case, and the Porters have failed to show otherwise. Therefore, the Porters' complaint is time-barred and must be dismissed.

---

[11] When arguing that equitable tolling should apply, the Porters suggest – for the first time – that GreenPoint falsified the information in the loan applications regarding Mrs. Porter's monthly income. This allegation suffers from the same problem as the Porters' discriminatory lending claim: it was not raised in the complaint, thus preventing the court from considering it when resolving Defendants' motions to dismiss. *See Zachair*, 965 F.Supp. at 748 n.4.

Were this fact to be considered, however, it would only confirm that the doctrine of equitable tolling is inapplicable to this case. On June 21, 2007, Mrs. Porter initialed each page of the loan applications and, accordingly, she is presumed to have read the information therein on that date. *Holloman*, 391 Md. at 595. Upon reading falsified information in a loan application, a reasonable person would have undertaken an immediate investigation regarding the circumstances surrounding the loan and its terms. Mrs. Porter's apparent failure to do so further indicates that she did not act with "usual or ordinary diligence" in the protection of her rights, and that no basis exists for equitable tolling. *Id.* at 452.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss will be granted.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
